**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|                                    |     |                         |
| ---------------------------------- | --- | ----------------------- |
| JAMES E. MWAIPUNGU,                | )   |                         |
|                                    | )   |                         |
| Plaintiff,                         | )   |                         |
|                                    | )   |                         |
| v.                                 | )   | No. 4:14-CV-1996 JAR    |
|                                    | )   |                         |
| SALLY Q. YATES[1],                 | )   |                         |
| Acting U.S. Attorney General,      | )   |                         |
|                                    | )   |                         |
| Defendant.                         | )   |                         |

## MEMORANDUM AND ORDER

### I. Introduction and Background

Removal proceedings were initiated against Plaintiff James E. Mwaipungu ("Plaintiff") on August 20, 2008, charging him with removal as an alien who falsely represented himself to be a United States citizen under Section 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii); as an alien present in the United States without being admitted or paroled under Section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i); and as an alien not in possession of a valid entry document at the time of application of admission under Section 212(a)(7)(A)(i), 8 U.S.C. § 1182(a)(7)(A)(i). Plaintiff challenged his removal claiming to be a United States citizen by birth.

Following a hearing, an Immigration Judge found Plaintiff was removable as charged and ordered him removed to Tanzania. Plaintiff appealed the decision to the Board of Immigration

---

[1] Sally Q. Yates is now the Acting U.S. Attorney General. Rule 25(d) of the Federal Rules of Civil Procedure provides that when a public officer is a party to an action in his or her official capacity, and during the pendency dies, resigns, or otherwise ceases to hold office, the officer's successor shall be automatically substituted as a party, and proceedings following the substitution shall be in the name of the substituted party. Accordingly, pursuant to Rule 25(d), the Court hereby orders that Sally Q. Yates be substituted for U.S. Attorney General Loretta Lynch as the defendant in this action.

Appeals ("BIA") which dismissed the appeal. Plaintiff filed a Petition for Review with the Eighth Circuit Court of Appeals alleging the BIA erred in upholding the Immigration Judge's determination that he is not a citizen of the United States. <u>Mwaipungu v. Holder</u>, 8th Cir. Case No. 14-2214. On the Parties' joint motion, the Eighth Circuit transferred the matter to this Court for a hearing on Plaintiff's nationality claim pursuant to 8 U.S.C. § 1252(b)(5)(B)[2] (Doc. 1). The Court held an evidentiary hearing on Plaintiff's nationality claim, and at the Court's direction, the Parties have submitted proposed findings of fact and conclusions of law (Docs. 19, 20). Pursuant to Federal Rule of Civil Procedure 52(a), the following constitute the Court's Findings of Fact and Conclusions of Law. The Court finds and concludes Plaintiff has failed to produce substantial credible evidence of U.S. citizenship, and Defendant has shown by clear and convincing evidence that Plaintiff is not a U.S. national.

## II. Findings of Fact

1. Plaintiff was born on September 28, 1975 (Transcript of Evidentiary Hearing ("Tr.") 8:10).

2. Plaintiff testified that he was born in the United States after his biological parents came to New York from Tanzania to visit friends (Tr. 16:15-20).

3. Plaintiff testified that he returned to Tanzania when he was approximately 6 and grew up there (Tr. 24:20-25:4, 96:8-97:23).

---

[2] Section 1252(b)(5)(B) provides as follows:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28 [Declaratory Judgment].

4.  On July 25, 1994, Plaintiff applied to New Hampshire College (now Southern New Hampshire University) as an international student (Gov't Ex. 2). On his application, Plaintiff indicated that he was born in Dar es Salaam, Tanzania (Id. at 1). Plaintiff signed his name to the application, attesting, "I certify that the information contained in this application and in all documents I forward to you is true and complete to the best of my knowledge." (Id.; Tr. 25:2-26:11; 97:18-102:14).

5.  Plaintiff obtained an F-1 multiple entry visa on August 29, 1994 so that he could travel to the United States to attend New Hampshire College (Gov't Ex. 9). Plaintiff testified that, in so-doing, he presented to the United States Embassy a passport issued by the government of Tanzania that documented his place of birth as "D'Salaam," Tanzania (Tr. 102:15-103:14).

6.  Plaintiff came to the United States in 1994 via his Tanzanian passport (Gov't Ex. 9).

7.  On September 4, 1994, Plaintiff filed an application for an original Social Security number (Gov't Exs. 3, 4). On his application, Plaintiff indicated his place of birth as "D'Salaam Tanzania" (Gov't Ex. 4). In support of his application, Plaintiff provided his Tanzanian Passport and I-94 Stamp (Id.). Plaintiff signed the application under the warning, "Deliberately furnishing or causing to be furnished false information on this application is a crime punishable by fine or imprisonment, or both" (Id.).

8.  On February 15, 1997, Plaintiff married a U.S. citizen, Laura Mwaipungu (nee Morse). (Gov't Ex. 7). A certified copy of Plaintiff's 1997 marriage certificate lists his birthplace as "Disalaam, Tanzania" (Gov't Exs. 12).

9.  On September 16, 1997, Plaintiff's daughter was born. A certified copy of the certificate of birth, reflects that Plaintiff's birthplace is "Dar Es Sacaam [sic], Tanzania" (Gov't Ex. 13).

10. Records from the Department of Homeland Security reflect that Plaintiff's wife signed an I-130 Petition for Alien Relative on May 15, 1998, indicating that Plaintiff was born in Tanzania (Gov't Ex. 7). The I-130 Petition was submitted to the Immigration and Naturalization Service together with an I-485 Application to Register Permanent Residence or Adjust Status (Gov't Ex. 8). Plaintiff attached to the I-485 a birth certificate from the United Republic of Tanzania indicating that, on September 28, 1975, a son named "James" was born to Mr. Edward James Mwaipungu ("Mr. Mwaipungu") and Ms. Chiku Mfaume, both citizens of Tanzania, in a maternity home in Dar es Salaam Tanzania (Gov't Ex. 10). Plaintiff also submitted a signed biographical form indicating that he was born in D'Salaam, Tanzania, and containing a warning that "[s]evere penalties are provided by law for knowingly and willfully falsifying or concealing a material fact" (Gov't Ex. 11).

11. Plaintiff and his wife did not appear for an interview on their applications, and on October 25, 1999, the INS denied the applications as abandoned (Tr. 43:16-44:3; 122:11-123:25).

12. The Immigration and Naturalization Service placed Plaintiff in removal proceedings on November 5, 1999 (Tr. 43:16-44:3; 122:11-123:25).

13. In December 1999, Plaintiff's mother died. Plaintiff traveled back to Tanzania in December 1999 for the funeral (Tr. 44:4-9;124:11-22). He traveled on his Tanzanian passport reflecting his birth in Tanzania (Id.; Gov't Ex. 9).

14. In 2000, Plaintiff applied for non-immigrant tourist (B1/B2) visas at the U.S. Embassy in Tanzania in the hopes of returning to the United States (Gov't Exs. 14-16).

15. The State Department records reflect that Plaintiff identified himself as someone who was born in Tanzania, who presented a Tanzanian passport reflecting the same, and who certified

in his application for a visa that the information he provided was true and correct to the best of his belief (Id.).

16. Plaintiff testified at the evidentiary hearing that he informed the U.S. Embassy that he was a Tanzanian national by virtue of his providing his Tanzanian passport (Tr. 48:22-24; 125:7-15). However, in an April 15, 2015 deposition, Plaintiff testified under oath that he identified himself to the U.S. Embassy as a U.S. citizen who was born in the United States (Tr. 126:1-128:22; 136-137).

17. The U.S. Embassy denied Plaintiff the visas on January 21, 2000 (Gov't Exs. 14-16).

18. Thereafter, on April 19, 2000, Plaintiff was apprehended by an Immigration Inspector as he attempted to enter the United States from Canada (Tr. 50:7-23; 131:12-20). Plaintiff was returned to Canadian Immigration where he was taken into custody and jailed for one week (Tr. 51:16-52:1). A search revealed he had a photo-substituted (fake) U.S. Passport with another individual's name on it (Tr. 132:2-133:22).

19. After being released from Canadian custody, Plaintiff again attempted to enter the United States and successfully did so sometime before Easter in 2000 (Tr. 52:12-53:12; 134:6-135:25).

20. On February 19, 2004, Plaintiff filed an application for a replacement Social Security card (Gov't Exs. 3, 5). On his application, Plaintiff indicated his place of birth as, "DSALAAM, TZ" (Gov't Ex. 5). Plaintiff signed his application under the warning, "Deliberately furnishing (or causing to be furnished) false information on this application is a crime punishable by fine or imprisonment or both" (Id.).

21. On June 20, 2008, Plaintiff was indicted in the U.S. District Court for the Eastern District of Missouri for "knowingly mak[ing] a false statement in an application for a [U.S.] passport" in violation of 18 U.S.C. § 1542 (Gov't Exs. 18, 19).

22. On January 30, 2009, Plaintiff pled guilty to having made a false statement in an application for a United States Passport (Gov't Exs. 18, 19).

23. On August 20, 2008, Plaintiff was placed in removal proceedings and charged with being subject to removal pursuant to Section 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii), as an alien who falsely represented himself to be a citizen of the United States; Section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General, and Section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not being in possession of a valid, unexpired immigrant visa or other travel document as required under the Act (Administrative Record ("AR") at 452-53).

24. After a hearing, an Immigration Judge found that Plaintiff was removable as charged, that his claim to United States citizenship was "meritless," and ordered Plaintiff removed to Tanzania (AR at 124, 130-143).

25. Plaintiff seeks to introduce the sworn testimony of Mr. Mwaipungu (now deceased), from Plaintiff's 2011 removal proceedings (Tr. 62:5-66:14; 177:11-21). Mr. Mwaipungu testified he and his wife came to the United States in the 1970s and that Plaintiff was born in a private home in New York during their stay (AR at 166, 168, 170). He did not remember whether Plaintiff's birth was ever registered in New York (AR at 172). When they returned to Tanzania several years later, his wife tried to register the birth there, although Mr. Mwaipungu could not recall whether she was successful (AR at 169-170, 172). Mr.

Mwaipungu had difficulty remembering certain details of their time in New York, attributing his lack of recall to the 30 years that had passed and the fact that his wife was better educated and was the family record-keeper (AR at 171-72, 177, 181, 183).

26. Certified records of the U.S. Department of State reveal that when Mr. Mwaipungu, applied for his visa to come to the United States on November 30, 2010, he took an oath pursuant to 22 C.F.R. § 40.1(I)(2) certifying that the information he was providing in support of his application was true and correct to the best of his belief (Gov't Ex. 17). His application form shows that in the process of answering questions, Mr. Mwaipungu attested in 2010 that he had never before been issued a United States visa, and that he had never before visited the United States (Id.).

27. Plaintiff testified he always believed he was born in New York because his parents told him he was born in the United States, and because family members, friends, and neighbors called him an explicit nickname used to refer to African Americans (Tr. 21:4-8).

28. Plaintiff does not have a certified copy of a birth certificate documenting his birth in the United States issued by either a hospital in the United States or a foreign government (Tr. 91:25-92:10).

29. However, both during his removal proceedings and during the evidentiary hearing in this matter, Plaintiff produced a document that purports to be a faxed copy of a certificate of birth from the United Republic of Tanzania dated November 28, 1979, and listing his birth place as "New York--USA" (AR at 274; Pla's Ex. A). When questioned about this document at the evidentiary hearing, Plaintiff responded that he does not have a certified copy of this document (Tr. 146:11-147:14). He also could not provide any details about how he obtained the document, or how it appeared in the record (Id.).

30. In support of his claim that he was born in the United States, Plaintiff offered several letters and affidavits from his family. Specifically, Plaintiff introduced the following at the evidentiary hearing on October 16, 2015:

   a. An "Affidavit of Birth" signed by Mr. Mwaipungu, stating that Plaintiff was born in New York because "I was there when my wife gave birth to my son. James was born at home with the assistan[ce] of my wife's friend . . . . Then he was taken to Harlem Hospital where he was checked than released" (Pla's Ex. B).

   b. An "Affidavit of Birth" signed by Mr. Godfrey Karanja, Plaintiff's cousin, indicating that Plaintiff was born on September 28, 1978 in America because "Mr. James has a nickname Nigga in our childhood, he got that nickname cause, he was born in America" (Pla's Ex. C).

   c. A signed letter, in English, from Zahara Mfaume, Plaintiff's Grandmother, indicating that Plaintiff was born in America (Pla's Ex. D).

   d. A letter from Ayoub A. Mfaume, Plaintiff's uncle, stating that Plaintiff was born in the United States in September 1975 (Pla's Ex. E).

   e. A letter signed by Rehema H. Mwaipungu, Plaintiff's sister, in which Ms. Mwaipungu states, in part:

      I remained behind with my grandmother who cared for me until my mother and father returned in 1979. When they lived [in] America[,] I was told a few times that I was going to have a brother and sure enough when they returned James was with them.

      (Pla's Ex. F).

   f. A declaration of oath and a letter filed by Mr. Mwaipungu in support of his request for assistance from the Permanent Representative to the United Nations, United Republic of Tanzania, in securing Plaintiff's birth certificate (Pla's Exs. H, I).

g. A letter from Rose Mkapa, the Permanent Representative to the United Nations for the United Republic of Tanzania which states:

> This letter is to certify that we have officially been informed by the letter received from the Advocate of Mr. Edward J. Mwaipungu a Tanzania National who previously lived in New York Harlem area between the years 1973 until 1979 as explained herewith in the following attachment of "Declaration of Oath" that the said James Edward Mwaipungu was born in Harlem, New York and that he needs help in securing his birth certificate and other rights as deemed necessary.

(Pla's Ex. G).

### III. Conclusions of Law

1. In a deportation case, "once removal proceedings have been initiated, a petition for review under 8 U.S.C. § 1252(b)(5) is the only avenue by which a person may seek a judicial determination of his or her status as a national of the United States." Ayala-Villanueva v. Holder, No. 2:09-cv-1272-KJD-PAL, 2011 WL 2791819, at *2 (D. Nev. July 14, 2011) (quoting Chau v. INS, 247 F.3d 1026, 1028 n.2 (9th Cir. 2001)). If, by finding of the reviewing court, "the record presents a genuine issue of material fact as to the petitioner's nationality, the reviewing court must transfer the proceeding to a district court for de novo determination." Id. (quoting Ayala–Villanuava v. Holder, 572 F.3d 736, 738 (9th Cir. 2009)).

2. Meanwhile, the remaining issues in the petition to the reviewing court are held in abeyance pending a judicial determination of petitioner's citizenship claim from the district court. Id. (citing Ayala-Villanuava, 572 F.3d at 740). Under 8 U.S.C. § 1252(b)(5), the district court must make a decision on the issue of citizenship as if the action had been brought as a declaratory judgment action. Caballero v. Holder, No. 2:13-cv-00992 JWS, 2014 WL 1763203, at *2 (D. Ariz. May 5, 2014).

3. The Government "bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence." <u>Mondaca-Vega v. Lynch</u>, 808 F.3d 413, 419 (9th Cir. 2015) (en banc), <u>cert. denied</u> 137 S. Ct. 36 (Oct. 3, 2016) (quoting <u>Chau</u>, 247 F.3d at 1029 n.5); <u>see also</u> <u>Moreno v. Holder</u>, 980 F. Supp. 2d 394, 397 (E.D.N.Y. 2013).

4. Where, as here, the Government offers evidence of foreign birth, a presumption of alienage arises, and the burden shifts to the petitioner to produce "substantial credible evidence" of his citizenship. <u>Mondaca-Vega</u>, 808 F.3d at 419.

5. Should the petitioner produce "substantial credible evidence" in support of his claim of citizenship, the burden shifts back to the Government to prove by clear and convincing evidence that the petitioner is subject to removal. <u>Id.</u>

6. During the evidentiary hearing, the Government raised timely objections to several pieces of Plaintiff's proffered evidence including the prior testimony of Mr. Mwaipungu, various affidavits and other letters, and Plaintiff's purported Certificate of Birth. The Court will address each of the objections in turn.

7. As a preliminary matter, the Court notes that the Federal Rules of Evidence do not apply in immigration hearings and therefore evidence included in the administrative record is not automatically admissible before this Court. <u>Kim v. Holder</u>, 560 F.3d 833, 836 (8th Cir. 2009) (citing <u>Solis v. Mukaskey</u>, 515 F.3d 832, 935-36 (8th Cir. 2008)).

8. First, the Government asserts that the prior testimony of Mr. Mwaipungu should be excluded as inadmissible hearsay because Federal Rule of Evidence 804 requires certain guarantees of trustworthiness for the Court to accept the testimony of a deceased witness pursuant to this rule, and those guarantees of trustworthiness are lacking in this case (Doc. 19 at 14).

9.  The Court finds that the testimony of Mr. Mwaipungu is admissible pursuant to Federal Rule of Evidence 804(b)(1) because he is unavailable, his testimony was given as a witness at another proceeding concerning the same subject, and the Government there had the opportunity and similar motive to develop the testimony. Although the Government asserts that certain facts regarding the credibility of Plaintiff's father were not known to it at the time of the Immigration Hearing, the Court finds that the Government's argument goes to credibility, not admissibility, of the testimony.

10. The Government also objects to the various affidavits and letters Plaintiff proffers in support of his claim that he was born in the United States (Pla's Exs. B, C, D, E, F, G, H, I.).

11. The Court ruled on the record that the letter from Plaintiff's grandmother, Zahara Mfaume, was inadmissible as it is unsworn, undated, and, although Plaintiff's grandmother does not speak English, in English (Pla's Ex. D; Tr.73:25-77:2). The Court determined that the letter was unauthenticated and inadmissible hearsay not within an exception to the rule (Tr.73:25-77:2). Plaintiff reserved the right to file an argument as to this issue in his post-hearing filing but did not do so. The Court's ruling is, therefore, unmodified, and the letter from Plaintiff's grandmother is excluded.

12. The Government objects to the November 18, 2008 affidavit of Godfrey Karanja, Plaintiff's cousin, on the basis that it is inadmissible hearsay (Pla's Exs. C). The Government asserts that Mr. Karanja lives in Jefferson City, Missouri, and no reason was provided as to why Mr. Karanja was unavailable to testify in person at the evidentiary hearing.

13. The Court finds Mr. Karanja's letter inadmissible. Not only has Plaintiff not provided the Court with any reason why Mr. Karanja was unavailable to testify but also, the contents of Mr. Karanja's affidavit do not appear to be based on any personal knowledge, as he bases his

assertion that Plaintiff was born in "America" on Plaintiff's childhood nickname, not any personal knowledge of the circumstances surrounding Plaintiff's birth.

14. The Government also objects to the admissibility of Plaintiff's Exhibit E, an unsworn and unsigned letter dated January 22, 2009 from Plaintiff's uncle, Ayoub Mfaume (Pla's Ex. E). The Government asserts that Mr. Mfaume lacks personal knowledge and therefore the letter is inadmissible hearsay not within an exception to the rule (Doc. 19 at 17-18).

15. The Court finds Mr. Mfaume's letter to be inadmissible. Plaintiff failed to lay a proper foundation regarding the letter; the letter is unauthenticated. The letter is unsigned, it is not sworn under oath, and, although it is unclear whether Plaintiff's uncle speaks English, it is written in English (Tr. 77:3-79:18).

16. Finally, the Government objects to the admissibility of the unsworn letter from Plaintiff's sister, Rehema Mwaipungu, dated October 2, 2009 (Doc. 19 at 18). The Government asserts that Ms. Mwaipungu lacks personal knowledge and therefore the letter is inadmissible hearsay not within an exception to the rule (Id.).

17. The Court finds the letter from Plaintiff's sister to be admissible. Plaintiff sufficiently authenticated the document because Plaintiff is familiar with his sister's handwriting and signature and testified that the letter was written in her handwriting and signed by her. Fed. R. Civ. P. 901(b)(2). Furthermore, according to Plaintiff, she speaks English. Although the letter is not a sworn document and Plaintiff's sister may not have personal knowledge regarding several of the statements she makes in the letter, the letter may fall within the family history exception to the hearsay rule. The Court will nevertheless review the entirety of Ms. Mwaipungu's letter for credibility.

18. Although the Government raised objections to Plaintiff's Exhibits B, G, H, and I during the evidentiary hearing, the Government does not assert these objections in its Amended Brief. Even if the Court were to consider the objections as raised during the evidentiary hearing, the Court finds these documents admissible.

19. Plaintiff's Exhibit B is an affidavit signed and sworn to by Plaintiff's father. The affidavit of Plaintiff's father is hearsay within an exception because Plaintiff's father is unavailable and the affidavit contains statements of family history pursuant to Federal Rule of Evidence 804(b)(4).

20. Plaintiff's exhibits H and I are similarly admissible sworn statements from an unavailable witness about the declarant's family history and Plaintiff's Exhibits G is admissible as an authenticated public record. Fed. R. Evid. 803(8), 804(b)(4).

21. The Government asserts that Plaintiff's purported Certificate of Birth, Plaintiff's Exhibit A, should be excluded because it is inadmissible hearsay that also cannot be authenticated.

22. The Court finds the purported Certificate of Birth not to be admissible. Although a Plaintiff's own testimony may be used to authenticate a foreign document, Plaintiff testified that he did not know how the document was obtained and further indicated that he could not verify that the document was valid. See Vatyan v. Mukasey, 508 F.3d 1179, 1183 (9th Cir. 2007) ("[A]n immigration petitioner may resort to any recognized procedure for authentication of documents in general, including the procedures permitted under Federal Rule of Evidence 901, and thus a petitioner's failure to obtain government certification of a foreign public document's authenticity is not necessarily a bar to admission of the document.").

22. Accordingly, the following evidence in support of Plaintiff's claim of citizenship remains before the Court: (1) Plaintiff's testimony; (2) the testimony and affidavit of Plaintiff's

father; (3) the unsworn letter from Plaintiff's sister, Rehema Mwaipungu, dated October 2, 2009; (4) the declaration of oath and letter filed by Plaintiff's father in support of his request for assistance from the Permanent Representative to the United Nations, United Republic of Tanzania, in securing Plaintiff's birth certificate; and (5) the Permanent Representative's written response (Pla's Exs. G, H, I).

23. Because the Court finds that this evidence is not credible, the Court concludes that Plaintiff has failed to provide "substantial credible evidence" of his citizenship. Mondaca-Vega, 808 F.3d at 419.

24. Plaintiff's credibility is hampered by his underlying conviction and plea for "knowingly mak[ing] a false statement in an application for a [U.S.] passport" in violation of 18 U.S.C. § 1542 (Gov't Exs. 18, 19). Fed. R. Evid. 609(a)(2); see also Bulatov v. Attorney Gen. of U.S., 524 F. App'x 848, 851 (3d Cir. 2013) (finding Immigration Judge appropriately considered Petitioner's guilty plea and conviction for making a materially false, fictitious, and fraudulent statement and representation in violation of § 1001).

25. Further, Plaintiff's testimony contradicts the numerous times that he previously claimed to have been born in Dar es Salaam, Tanzania and the documentary evidence in support of that claim, including Plaintiff's Tanzanian passport, several certified immigration applications, a Tanzanian birth certificate, his marriage certificate, and his daughter's birth certificate.

26. Next, the Court finds that the prior testimony of Mr. Mwaipungu is not credible, and accordingly, the Court affords it no weight.

27. Mr. Mwaipungu's prior testimony contains several inconsistencies. For example, he testified that he did not remember the name of the hospital where his wife was treated after Plaintiff's birth, but in his "Affidavit of Borth," he stated that Plaintiff was taken to Harlem Hospital

(AR 183, Pla's Ex. B). Mr. Mwaipungu also testified that he was not sure when he and his wife arrived in New York or where they lived while there, but in his Declaration of Oath, he specifically indicated that he arrived in New York in 1973 and lived in Harlem (AR 167-168; Pla's Ex. H). Vega-Alvarado v. Holder, No. CV 09-5591-RSWL AJWX, 2011 WL 333101, at *7 (C.D. Cal. Jan. 28, 2011); see also Mondaca-Vega v. Holder, 718 F.3d 1075, 1085 (9th Cir. 2013) ("It is well-settled that a fact-finder may rely on inconsistencies to support an adverse credibility determination.") adhered to on reh'g en banc sub nom. Mondaca-Vega v. Lynch, 808 F.3d 413 (9th Cir. 2015).

28. Furthermore, Mr. Mwaipungu was unable to recall many details of the circumstances of his alleged stay in the United States surrounding Plaintiff's birth. First, he could not remember in what year he entered the United States, the year in which he returned to Tanzania, Plaintiff's age when they departed the United States, where they lived in New York, or whether they lived in an apartment or a house (AR 167-168, 171, 182-183). Mondaca-Vega, 718 F.3d at 1085 ("[T]rial courts are generally permitted to evaluate credibility of testimony by assessing its level of detail."). As noted by the Immigration Judge and further confirmed upon this Court's review of the record, neither Plaintiff nor his father were able to provide a first name for either Mr. or Mrs. Brown, the couple allegedly wholly responsible for Plaintiff's family's stay in New York (AR 138).

29. Mr. Mwaipungu's testimony is also inconsistent with Certified Records of the U.S. Department of State (Gov't Ex. 17). The Certified Records reveal that when Mr. Mwaipungu applied for a visa to come to the United States on November 30, 2010, he took an oath pursuant to 22 C.F.R. §40.1(I)(2), certifying that the information he was providing in support of his application was true and correct to the best of his belief (Id.). His application form

shows that, in response to questioning, Mr. Mwaipungu attested that he had never before been issued a United States visa, and that he had never before visited the United States (Id.). However, Mr. Mwaipungu testified before the Immigration Judge that he had previously visited the United States in the 1970s (AR 167-168).

30. Similarly, as previously discussed, the Declaration of Oath and letter supported by Mr. Mwaipungu to the Permanent Representative to the United Nations for the United Republic of Tanzania are afforded no weight as the Court has found Mr. Mwaipungu not to be credible.

31. Finally, the letter from a Tanzanian Representative for the United Nations is wholly based on the noncredible documentation provided by Mr. Mwaipungu (Gov't Ex. G; AR 168).

32. The Court also notes that—even if it were to admit all of the aforementioned evidence presented by Plaintiff—it would nevertheless conclude that Plaintiff has failed to provide substantial credible evidence that he is a citizen of the United States. More specifically, the statements of Mr. Karanga, and Mr. Mfaume are entitled to little or no evidentiary weight because, as previously discussed, they are not based on personal knowledge of the location of Plaintiff's birthplace Cf. 22 C.F.R. § 51.42(b) (secondary evidence of birth in the United States may include, inter alia, affidavits of persons having personal knowledge of the facts of the birth). Moreover, neither party has identified the source of the purported Certificate of Birth or accounted for how it was obtained. Also, nothing in the record supports a finding that it is a valid foreign document accurately reflecting the circumstances his birth. Thus, even if the Court were to consider all the evidence Plaintiff has proffered in this matter, it would nevertheless conclude that Plaintiff has failed to produce substantial credible evidence of United States citizenship, notwithstanding the exclusion of certain evidence pursuit to its

aforementioned evidentiary rulings. <u>Boateng v. Lynch</u>, No. 11-72044, 2016 WL 7030688, at *1 (9th Cir. Dec. 2, 2016) (unpublished per curiam opinion) (quoting <u>Mondaca-Vega</u>, 808 F.3d at 426) (affirming district court's determination that government had met its burden of establishing Plaintiff's alienage, notwithstanding its exclusion of evidence Plaintiff had offered, as there were reasons to question the veracity of the evidence offered, and the court's conclusion was "'plausible in light of the record viewed in its entirety'"); <u>see also DeBrown v. Dep't of Justice</u>, 18 F.3d 774 (9th Cir. 1994) (finding parent's testimony and affidavits from two witnesses to birth did not rebut foreign birth certificate).

33. Finally, even if the Court were to find that Plaintiff had provided "substantial credible evidence" of United States citizenship, it would nevertheless conclude that the Government has shown by clear and convincing evidence that Plaintiff was born in Tanzania. <u>Mondaca-Vega</u>, 808 F.3d at 419 (citing <u>Lee Hon Lung v. Dulles</u>, 261 F.2d 719, 724 (9th Cir. 1958) (when burden shifts to government to show petitioner's alienage, the question is whether sufficient evidence warrants disregarding the petitioner's proof of citizenship)).

34. In support of its assertion of Plaintiff's alienage, the Government submitted Plaintiff's Tanzanian passport which lists Tanzania as his birthplace; certified immigration applications on which Plaintiff listed, under oath, Dar es Salaam as his birthplace; a Tanzanian birth certificate that he previously submitted to the INS; and his marriage certificate and his daughter's birth certificate, both of which reflect Tanzania as his birthplace (Gov't Exs. 2-5, 7-13).

35. For these reasons, the Court concludes that Plaintiff has failed to adduce "substantial credible evidence" that he was born in the United States, and that Defendant has established by clear

and convincing evidence that Plaintiff is not a United States national. <u>See</u> <u>Mondaca-Vega</u>, 808 F.3d at 419.

## IV. Conclusion

Wherefore, in accordance with the 8th Circuit Court of Appeals' Order transferring this case, pursuant to 8 U.S.C. § 1252(b)(5)(B), for a new hearing on his nationality claim and a decision on that claim as if an action had been brought in this Court under 28 U.S.C § 2201,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECLARED** that, after conducting an evidentiary hearing and a de novo review of the complete record pursuant to 8 U.S.C. § 1252(b)(5)(B), Plaintiff has failed to establish that he is a national of the United States, and that Defendant has shown by clear and convincing evidence that Plaintiff is not a United States national; and

**IT IS FURTHER ORDERED** that the Clerk of Court shall transmit a copy of these Findings of Fact and Conclusions of Law to the Clerk of the United States Court of Appeals for the Eighth Circuit.

Dated this 27th day of January, 2017.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE